

FILED
2021 Nov-08 PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHWESTERN DIVISION

| | |
|---|---|
| **JUSTIN BROWN,** ) | |
| **PLAINTIFF,** ) | |
| ) | |
| ) | **CASE NO.:** |
| **V.** ) | |
| ) | |
| **CHEROKEE NITROGEN, LLC** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **DEFENDANT.** ) | |

## COMPLAINT

## I.   JURISDICTION

1. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, and 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by Defendant.

2. This suit is authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

4. This suit is authorized and instituted under 42 U.S.C. § 1981.

5. This suit is authorized and instituted under 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act (FMLA).

6. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

7. Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.   PARTIES

8. Plaintiff, Justin Brown, ("Plaintiff" or "Brown") is a resident of Courtland, County, Alabama, and performed work for Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, the venue for this action lies in the Northwestern Division according to 28 U.S.C. § 1391(b),

9. Defendant, Cherokee Nitrogen LLC ("Defendant ") is a company registered and doing business in the State of Alabama. Defendant is also one of thirty-four (34) companies within the LSB Industries corporate family. Defendant has sufficient minimum contacts with the State of Alabama and is subject to service of process within the same.

10. Defendant employed at least 500 people during the current or preceding calendar year.

11.     Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75-miles of Plaintiff's worksite.

## III.   FACTS

12.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

13.     Justin Brown began his employment with Defendant on or about January 6, 2020, as a Chemical Operator.

14.     Brown performed his job as a Chemical Operator in a satisfactory or better manner.

15.     Brown received no discipline for his conduct or work performance other than the discipline described herein.

16.     Plaintiff is a person of African ancestry, colloquially referred to as "Black."

17.     Plaintiff is a person with anxiety and depression. Both conditions are disabilities as contemplated by the Americans with Disabilities Act.

18.     These disabilities substantially limit Brown in one or more major life activities, including, sleeping, thinking, and caring for himself, among others.

19.     Brown was able to perform the essential functions of his job as a Chemical Operator with or without accommodation for his disabilities.

20.     Soon after being hired, Brown noticed that he was being treated differently than his co-workers of European ancestry, colloquially referred to as "white."

21.     Defendant, Cherokee Nitrogen, LLC., maintains a system where it gives pay increases to employees who satisfactorily complete training modules to attain new skills.

22.     Shortly after being hired, Brown noticed that Wade Gaston, ("Gaston") his supervisor, routinely gave a white co-worker, Jared Sanders, uninterrupted time to complete the pay-raise modules.

23.     Even though Brown requested time to complete these modules, Gaston regularly interrupted him preventing him from completing them.

24.     New Operator training involves assigning new hires one-on-one training with a senior operator.

25.     Defendant did not train Plaintiff in accordance with its training customs.

26.     Instead, Defendant forced Brown to pursue operators to train him.

27.     Justin Lambert and other white operators received one-on-one training.

28.    The company's refusal to provide training created a fear of the job in Brown.

29.    Brown requested to transfer to another area to alleviate his anxiety over his lack of training, but Defendant denied the request.

30.    Defendant's security guidelines provide employees have no right to privacy in their vehicles.

31.    Upon entry to the plant, employees must stop at the guard station where the guard will check the employee's credentials, temperature, and may search the vehicle's glove box.

32.    Brown noticed that while he was repeatedly being searched, Defendant did not ask white employees to open their glove boxes.

33.    One evening, as Brown approached the guard station in his vehicle, he observed Cathy Williams ("Williams"), the guard, and Wade at the security post, talking.

34.    Brown stepped out of his vehicle voluntarily so Williams could check his temperature.

35.    Afterward, Wade and Williams exchanged words and she immediately asked to check Brown's glove box.

36.    Plaintiff explained that the glove box was locked, and the key was at his residence.

37.    Williams demanded entry into the glove box.

38.    Brown explained that he did not have the key and the only way to open the glove box would be to tear it open.

39.    Around this time, Mike Hester, an environmental specialist for Defendant, pulled Brown to the side and suggested that he park his car and ride into the property with Matt Smith, a white male co-worker.

40.    Williams did not ask to see Matt Smith's glove box.

41.    Gaston encouraged Cathy to perform the search on Brown's vehicle even though he had done nothing wrong.

42.    After Defendant searched his vehicle, Brown reported discrimination to Keira Tate ("Tate"), the Human Resources Manager.

43.    Tate investigated the matter and closed the case.

44.    Brown continued to experience harassment, retaliation, and discrimination by Defendant.

45.    On one occasion, Brown calmly asked a white co-worker, Kim Clemons ("Clemons") a question.

46.    Clemons responded by yelling and then punched a window.

47.    Defendant blamed Brown for the interaction, even though he did nothing wrong.

48.     Instead of issuing a warning, Defendant told Plaintiff to change his behavior.

49.     Defendant acknowledged that Plaintiff was not the aggressor only after Clemons, the white employee, admitted fault.

50.     Defendant pays employees an extra dollar per hour to cover shifts for their co-workers.

51.     Board Managers are responsible for making sure shifts are covered.

52.     Board managers post available shifts on a bulletin board and then assign available shifts to employees who volunteer by placing their names on the board.

53.     Since employees work twelve-hour shifts, if a shift does not get voluntarily filled, the person who worked before the missing operator must stay.

54.     When this happens, a twelve-hour shift becomes a thirty-six-hour shift.

55.     In February 2021, Plaintiff's relief person took a day off and did not show to fill that shift.

56.     Accordingly, Plaintiff had to work a thirty-six-hour shift.

57.     Plaintiff was disappointed after learning he would have to work an additional twelve hours with no break, so he asked his board manager, Mark Brooks, who oversaw the shifts being covered for that evening.

58.     Brooks said he did not, and Plaintiff became frustrated realizing that a thirty-six-hour shift was confirmed.

59.     Brown cursed as he left the room but did not direct the words at anyone.

60.     Defendant did not immediately discipline Brown.

61.     About two weeks later, Brown took FMLA leave to address severe anxiety and depression brought on by the mistreatment he was receiving at work.

62.     Plaintiff was out on leave for just under eight weeks.

63.     When Plaintiff returned to work, he was disciplined for allegedly cursing at Brooks.

64.     Cursing in Defendant's work environment is normal and doing so does not result in discipline.

65.     Plaintiff witnessed Douglas "Kyle" Oakley ("Oakley"), a white co-worker, curse at Ben Vanveckhoven, a manager, but Oakley's supervisor, Ray Aldridge, never disciplined him.

66.     Realizing that he was disciplined differently and unfairly, Brown met with the Human Resources manager and his manager, Brent Nichols ("Nichols").

67.     During this meeting, white employees admitted that Plaintiff was wrongfully accused of cursing at his boss and disciplined inappropriately.

68.     Defendant did not remove the discipline from Brown's file.

69.    After the meeting with Human Resources and Nichols, Plaintiff continued to perform satisfactorily.

70.    Defendant provides personal protective equipment ("PPE") through vending machines at no charge to employees.

71.    There are two vending machines, and each dispenses items differently. One machine dispenses items like a snack machine and the second machine is more of a locker system, whereby after an item is selected, the employee must remove the item from the box and then close the door.

72.    Employees access the PPE by entering their badge number and then choosing the desired item from a catalog displayed on a screen.

73.    On April 4, 2021, Brown used the first vending machine intending to get a pair of tinted safety glasses, but it dispensed a pair of clear glasses instead.

74.    Brown got tinted glasses from the first machine on his second attempt.

75.    Next, Brown mistakenly dispensed a grinding wheel, that retails for less than two dollars from the second machine.

76.    Because he could not return the item to the locker, Brown left the grinding wheel on the table so a worker who needed it could use it.

77.    Leaving mistakenly dispensed items on the table was a common practice and employees are not disciplined for the practice.

78.     On April 15, 2021, Reese Koger accused Brown of stealing the grinding wheel and suspended him.

79.     Plaintiff did not steal anything.

80.     On or about April 20, 2021, Defendant terminated Brown's employment for allegedly stealing.

81.     Other employees who have not complained of discrimination or taken medical leave who have mistakenly dispensed items and left them on the table have not been fired.

## IV.    COUNT I – ADA – RETALIATION

82.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

83.     Brown is a person with a disability but was qualified for the Chemical Operator position and able to perform the essential functions of the job.

84.     In February 2021, Plaintiff engaged in a protected activity, by requesting an accommodation for his disability, time off to relieve his anxiety and depression.

85.     Plaintiff was out on leave for just under eight weeks.

86.     When Plaintiff returned from leave, he was disciplined for allegedly cursing at his boss.

87.     Other employees, who did not take leave for disabilities, have used profanity in the workplace and were not disciplined.

88.     It is not uncommon for employees to curse in the work environment.

89.     On or about April 20, 2021, Defendant terminated Plaintiff's employment.

90.     But for Plaintiff's engagement in a protected activity, Defendant would have retained Plaintiff in his position as a Chemical Operator.

91.     Defendant violated the ADA by terminating Plaintiff for engaging in a protected activity.

92.     Because Defendant violated the ADA, Plaintiff has been damaged by suffering loss of pay, benefits, and mental anguish.

## V.     COUNT II - TITLE VII - RACE – DISPARATE TREATMENT

93.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

94.     Plaintiff is a person of African ancestry.

95.     Plaintiff was qualified for the position of Chemical Operator.

96.     Soon after being hired, Defendant began treating Brown differently than his co-workers of European ancestry.

97.   Defendant, Cherokee Nitrogen, LLC., maintains a system where it pays its employees a base pay and increases pay for those employees who satisfactorily complete training modules for new skills.

98.   Plaintiff noticed that one of his white co-workers was routinely given time to complete the pay-raise modules.

99.   Comparatively, when Plaintiff tried to complete the modules, he was interrupted by his supervisor, Wade Gaston, and could not finish them.

100.   Typical training for a new operator involves one on one training with a more senior operator.

101.   Plaintiff was not trained this way. Plaintiff consistently had to pursue operators to train him.

102.   Conversely, white coworkers received one-on-one training.

103.   Justin Brown is a person of African ancestry, the race colloquially referred to as "Black."

104.   Plaintiff performed his job in a satisfactory or better manner and did not receive any disciplinary action other than the events described in this Complaint.

105.   Defendant's guard, Cathy Williams, encouraged by Gaston, purposefully and repeatedly selected Plaintiff's vehicle to search when he drove on to company property.

106.   Cathy did not perform these repeated and intrusive searches on any white employee's vehicle.

107.   During one situation, a white employee became hostile with Plaintiff after Plaintiff asked him a question.

108.   The employee began yelling and got angry, punching a window.

109.   Defendant initially blamed Brown for the interaction, even though he did not cause the situation.

110.   Later, Defendant learned that Brown was not the aggressor when the white employee admitted his behavior.

111.   Despite knowing that Brown did nothing wrong, Defendant still counseled him to change his behavior.

112.   When Plaintiff returned from FMLA leave he was disciplined for allegedly cursing at his boss.

113.   Brown did not curse at his boss.

114.   Other employees of European ancestry have used profanity around management and were not disciplined.

115.   It is not uncommon for employees to curse in Defendant's work environment.

116.   For example, the Union President, a person of European ancestry, cursed at a member of management but was neither terminated nor disciplined.

117.   Plaintiff met with the Human Resources Manager and his manager, Brent Nichols.

118.   During this meeting, Defendant's employees admitted that Plaintiff was right about these issues, but the unnecessary disciplinary warnings were not removed from Plaintiff's file.

119.   Defendant's employee, Reese Koger, terminated Plaintiff's employment on or about April 20, 2021.

120.   Other employees of European ancestry engaged in the same or similar conduct but remained employed.

121.   Defendant's actions, refusing training, singling him out for scrutiny, and discipline violated Title VII.

122.   Because Defendant violated Title VII, Plaintiff has been damaged, by suffering loss of pay and benefits.

123.   Defendant did not discipline white employees for the same or similar conduct.

124.   Plaintiff's Race was a motivating factor in Defendant's decision to deny training, repeatedly search, and discipline Plaintiff.

125.   Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff lost pay and continued to be paid less.

## VI.   COUNT III - 42 U. S. C. § 1981 DISPARATE TREATMENT

126.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

127.   Plaintiff is a person of African ancestry.

128.   Plaintiff was qualified for the position of Chemical Operator.

129.   Soon after being hired, Defendant began treating Brown differently than his co-workers of European ancestry.

130.   Defendant pays its employees a base pay and increases pay for those employees who satisfactorily complete training modules to acquire new skills.

131.   Plaintiff noticed that one of his white co-workers was routinely given time to complete the pay-raise modules.

132.   However, when Brown tried to complete the modules, he was interrupted by his supervisor, Wade Gaston, and could not finish them.

133.   Typical training for a new operator involves one on one training with a more senior operator.

134.   Plaintiff was not trained this way. Plaintiff consistently had to pursue operators to train him.

135.   Conversely, the white coworkers received one on one training.

136.   Justin Brown is a person of African ancestry, the race colloquially referred to as "Black."

137.   Plaintiff performed his job in a satisfactory or better manner and did not get any disciplinary action other than the events described in this Complaint.

138.   Defendant's guard, Cathy Williams, encouraged by Gaston, purposefully and repeatedly selected Plaintiff's vehicle to search when he drove on to company property.

139.   Williams did not perform these repeated and intrusive searches on any white employee's vehicle.

140.   During one situation, a white employee became hostile with Plaintiff after Plaintiff asked him a question.

141.   The employee began yelling and got angry, punching a window.

142.   Defendant initially blamed Brown for the interaction, even though he did not cause the situation.

143.   Later, Defendant learned that Brown was not the aggressor when the white employee admitted his behavior.

144.   Despite knowing that Brown had done nothing wrong, Defendant still counseled him to change his behavior.

145.   When Plaintiff returned from FMLA leave he was disciplined for allegedly cursing at his boss.

146.   Brown did not curse at his boss.

147.   Other employees of European ancestry have used profanity around management and were not disciplined.

148.   It is not uncommon for employees to curse in Defendant's work environment.

149.   For example, the Union President, a person of European ancestry, cursed at a member of management but was neither terminated nor disciplined.

150.   Plaintiff met with the Human Resources Manager and his manager, Brent Nichols.

151.   During this meeting, Defendant's employees admitted that Plaintiff was right about these issues, but the unnecessary disciplinary warnings were not removed from Plaintiff's file.

152.   Defendant's employee, Reese Koger, terminated Plaintiff's employment on or about April 20, 2021.

153.   Other employees of European ancestry engaged in the same or similar conduct but remained employed.

154.   Defendant's actions, singling him out for scrutiny and discipline violated Title VII.

155.   Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay and benefits.

156. Defendant did not discipline white employees for the same or similar conduct.

157. Defendant decided to deny training, repeatedly search, and discipline Plaintiff because of his race.

158. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff lost pay and continued to be paid less.

## VII.   COUNT IV – TITLE VII DISCHARGE

159.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

160. Plaintiff is a person of African ancestry.

161. Plaintiff was qualified for the position of Chemical Operator.

162. Defendant's employee, Reese Koger, terminated Plaintiff's employment on or about April 20, 2021.

163. Other employees of European ancestry engaged in the same or similar conduct but remained employed.

164. Defendant's actions, singling him out for scrutiny and discipline violated Title VII.

165. Because Defendant violated Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

166. Defendant did not discipline white employees for the same or similar conduct.

167. Plaintiff's Race was a motivating factor in Defendant's decision to search and discipline Plaintiff.

168. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff lost pay and continued to be paid less.

## VIII.   COUNT V - 42 U. S. C. § 1981 DISCHARGE

169. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

170. Plaintiff is a person of African ancestry.

171. Plaintiff was qualified for the position of Chemical Operator.

172. Soon after being hired, Plaintiff noticed that he was being treated differently than his co-workers of European ancestry.

173. On or about April 20, 2021, Reese Koger terminated Plaintiff's employment for allegedly stealing a grinding wheel valued at less than $2.00 from the dispenser.

174. Brown did not steal the grinding wheel.

175. Instead, Plaintiff placed the mistakenly dispensed wheel on the table for other employees to use.

176. Plaintiff followed customary practice by placing the mistakenly dispensed wheel on the table.

177. White employees were not fired, or even disciplined for placing grinding wheels on the table or mistakenly dispensing them.

178.   Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

179.   Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering a loss of pay, benefits, and mental anguish.

180.   Defendant's decision to terminate Plaintiff's employment was made, in whole or part, because of his race in violation of 42 U. S. C. § 1981.

## IX.   COUNT VI – TITLE VII - DISCHARGE

181.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

182.   Plaintiff is a person of African ancestry.

183.   Plaintiff was qualified for the position of Chemical Operator.

184.   Soon after being hired, Plaintiff noticed that he was being treated differently than his co-workers of European ancestry.

185.   On or about April 20, 2021, Reese Koger terminated Plaintiff's employment for allegedly stealing a grinding wheel valued at less than $2.00 from the dispenser.

186.   Brown did not steal the grinding wheel.

187.   Instead, Plaintiff placed the mistakenly dispensed wheel on the table for other employees to use.

188.   Plaintiff followed customary practice by placing the mistakenly dispensed wheel on the table.

189.   White employees were not fired, or even disciplined for placing grinding wheels on the table or mistakenly dispensing them.

190.   Because Defendant discriminated against Plaintiff, in whole or in part due to his race, Plaintiff lost pay and continues to be paid less.

191.   Defendant's actions, singling him out for scrutiny and discipline violated Title VII.

192.   Because Defendant violated Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

193.   Defendant did not discipline white employees for the same or similar conduct.

194.   Plaintiff's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

195.   Because Defendant discriminated against Plaintiff, in whole or in part because of his race, Plaintiff lost pay and continues to be paid less.

## X.    COUNT VII - TITLE VII - RETALIATION

196.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

197.   Plaintiff was qualified for his position as a Chemical Operator.

198.   In January 2021, Plaintiff complained of discrimination to his Human Resources Manager.

199.    After Plaintiff complained Defendant held a meeting in which Plaintiff explained his concerns about his treatment.

200.    During the meeting, Defendant was made aware that many of Plaintiff's complaints were substantiated.

201.    Shortly after the meeting Plaintiff took an FMLA qualifying leave.

202.    After Brown returned from leave, on or about April 20, 2021, Reese Koger terminated Plaintiff's employment for allegedly stealing a grinding wheel valued at less than $2.00 from the dispenser.

203.    Brown did not steal the grinding wheel.

204.    Instead, Plaintiff placed the mistakenly dispensed wheel on the table for other employees to use.

205.    Plaintiff followed customary practice by placing the mistakenly dispensed wheel on the table.

206.    White employees were not fired, or even disciplined for placing grinding wheels or other mis-dispensed items on the table.

207.    But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Chemical Operator.

208.    Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

209.   Because Defendant violated Title VII, Plaintiff has been damaged by suffering a loss of pay, benefits, and mental anguish.

## XI.   COUNT VIII - 42 U. S. C. § 1981 - RETALIATION

210.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

211.   Plaintiff was qualified for his position and able to perform the essential functions of the job.

212.   Plaintiff was qualified for his position as a Chemical Operator.

213.   In January 2021, Plaintiff complained of discrimination to his Human Resources Manager.

214.   After Plaintiff complained, Brown explained his concerns about his treatment at a meeting that Defendant called.

215.   During the meeting, Defendant was made aware that many of Plaintiff's complaints were substantiated.

216.   Shortly after the meeting Plaintiff took an FMLA qualifying leave.

217.   Shortly after Brown returned from leave, on or about April 20, 2021, Reese Koger terminated Plaintiff's employment for allegedly stealing a grinding wheel valued at less than $2.00 from the dispenser.

218.   Brown had not stolen the grinding wheel.

219.   Instead, Plaintiff placed the mistakenly dispensed wheel on the table for other employees to use.

220.   Plaintiff followed customary practice by placing the mistakenly dispensed wheel on the table.

221.   White employees were not fired, or even disciplined for placing grinding wheels or other mis-dispensed items on the table.

222.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as a Chemical Operator.

223.   Defendant violated 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

224.   Because Defendant violated 42 U. S. C. § 1981, Plaintiff has been damaged by suffering a loss of pay, benefits, and mental anguish.

## XII.   COUNT IX – FMLA - RETALIATION

225.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

226.   During the 12 months before February 1, 2021, Defendant employed Plaintiff for at least 1,250 hours of service.

227.   Defendant employs fifty (50) or more people within a 75-mile radius of the location that Brown worked for each working day during each of the 20 or

more calendar workweeks in the current or preceding calendar year before February 1, 2021.

228.   In February 2021, Plaintiff provided notice of unforeseeable FMLA leave for his mental health.

229.   Plaintiff provided notice of his unforeseeable need for FMLA leave as soon as practicable.

230.   Defendant terminated Plaintiff's employment on April 20, 2021.

231.   Reese Koger informed Plaintiff that Defendant terminated his employment.

232.   Defendant's manager, Reese Koger, terminated Plaintiff's employment, in whole or part, because Plaintiff exercised his FMLA rights.

233.   Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged by suffering a loss of pay and benefits.


## PRAYER FOR RELIEF


**WHEREFORE,** Plaintiff respectfully prays for the following relief:

234.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and

at the Defendant's request from continuing to violate the Americans with Disabilities Act;

235.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

236.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

237.   Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

238.   Enter an Order requiring Defendant  to make Plaintiff whole by reinstating him to the position he would have had before termination;

239.   Award Plaintiff back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; emotional distress, punitive damages, nominal damages;

240.   Attorneys' fees and costs;

241.   Award Plaintiff equitable relief as provided by law; and,

242.   Award any different or additional relief as determined by the Court to which Plaintiff is entitled.

_____

Kira Fonteneau (FON007)

**OF COUNSEL:**

Barrett & Farahany
Two 20th Street North, Suite 900
Birmingham, Alabama 35203
T: 205.564.9005 F: 205.564.9006

## PLEASE SERVE DEFENDANT AS FOLLOWS

**CAPITOL CORPORATE SERVICES INC**

**2 North Jackson Street, Ste. 605**

**Montgomery, AL 36105**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **JUSTIN BROWN,** | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| | ) | **CASE NO.:** |
| **V.** | ) | |
| | ) | |
| **CHEROKEE NITROGEN, LLC** | ) | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | ) | |
| | ) | |

**EXHIBIT A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☐ EEOC | 420-2021-01705 |

_____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Justin Brown | (b)(7)(C) 1 line redacted | (b)(7)(C) 1 line redacted |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| (b)(7)(C) 1 line redacted | Courtland, AL 35618 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Cherokee Nitrogen LLC | 500 | (256) 359-7000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1080 Industrial Dr, Cherokee, AL 35616 | Cherokee, AL 35616 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| United Steel Workers Local 417-G | 500 | (256) 263-0211 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| USW Local 417-G, 4390 Old Lee HWY | Cherokee, AL 35616 | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

04/20/2021

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1.   I am a person of African ancestry, colloquially referred to as Black.

2.   I began working for the Respondent on or about as a Chemical Operator on or about.

3.   All of my performance appraisals met expectations.

4.   I had no recent discipline in my employee file.

5.   Soon after I was hired, I noticed that I was being treated differently than my co-workers who were of European ancestry, colloquially referred to as white.

6.   For example, Respondent maintains a system where it pays its employees a base pay, however, the company increases pay for those employees who satisfactorily complete training modules for new skills.

7.   When I was hired, I noticed that my white co-worker, who started a couple of months before me was routinely given time to complete the modules that would increase his pay.

8.   However, when I would try to complete the modules, my supervisor, Wade Gaston, would interrupt me so that I could not get them done.

9.   I also noticed that the same manager purposefully selected my vehicle to search as it came on company property. No other employee who was not Black was subjected to the search.

10.  Shortly after the search, I reported what I felt was discrimination to the Human Resources Manager. Kiara (LNU)

11.  The HR Manager, Keira Tate, said she would investigate, but later told me that she could not prove discrimination.

12.  After the company closed the case, I continued to experience discrimination and harassment from the company.

13.  My Union was aware of the discrimination that I suffered, but despite having knowledge of the problems I was experiencing, did not advocate for me with the company despite my membership in the union.

14.  When white employees had problems with the company, the Union regularly intervened.

15.  One day earlier this year a White employee became rowdy with me after I merely asked him a question. The employee began to yell and got angry until he punched through a glass window.

16.  Initially the company blamed me for the interaction even though I had done nothing wrong.

17.  Later, the company realized that I was not the aggressor when the white employee admitted to his behavior.

*Fonteneau Firm LLC – Lawyers for Working People*

18. The company did not issue the warning that it originally intended to, but instead told me that I needed to change my behavior. I had done nothing wrong.

19. Cherokee has a process by which it pays one employee an extra $1.00 per hour to ensure that the company's schedule is covered in the event of an absence.

20. Employees place their shifts on the board to ensure that others have an ample opportunity to cover the shift.

21. Since the company works 12 hour shifts, If a shift does not get filled the person who worked before the missing operator must stay over. When this happens a 12 hour shift becomes a 36 hour shift as the person must still continue to cover their own shift.

22. In early February my relief person took a day off, but nobody filled the shift. As a result I had to stay over.

23. When I came in and realized the problem, I did admittedly become upset. I did use a curse word, but it was not directed at a person in particular.

24. Other people who are not Black and who have not conveyed have used profanity and not been disciplined.

25. A few days level the stress of the situation began to cause me severe anxiety and depression.

26. As a result, I asked for and received FMLA.

27. I was out for a little under eight weeks.

28. When I returned I was disciplined for allegedly cursing at my boss.

29. It was not uncommon for people to curse in the work environment, in fact, the Union President, a white person cursed out a member of manager but was not terminated or disciplined.

30. During these issues I met with Human Resources and my manager Brent Nichols. During that talk, the company admitted the issues I discussed were true, but did not remove the unnecessary discipline from my file.

31. After the meeting, I continued to perform my work as required.

32. On April 15, 2021, Reese Koger sent me home, accusing me of stealing.

33. I did not steal and there was no proof that I stole anything.

34. On or about April 20, 2021, the company fired me.

I believe the Respondents Discriminated against me because of my race, in violation of Title VII and 42 U.S.C. § 1981.

I believe the Respondents retaliated against me because of my protected activity, reporting race discrimination in violation of 42 U.S.C. § 1981 and Title VII.

I believe Cherokee Nitrogen's actions violated the FMLA by retaliating against me because I sought leave for my serious medical needs.

I believe that Cherokee Nitrogen's acts in disciplining me after I sought leave as provided under ADA violated the Americans with Disabilities Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY–*When necessary for State or Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 04/27/2021 _____ Date           *Justin Saulter Brown* _____ Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHWESTERN DIVISION

JUSTIN BROWN,                          )
PLAINTIFF,                             )
                                       )
                                       )   CASE NO.:
V.                                     )
                                       )
CHEROKEE NITROGEN, LLC                 )   JURY TRIAL DEMANDED
DEFENDANT.                             )
                                       )

## EXHIBIT B

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Justin G. Brown, Sr.** <br> ~~(b) (r)(C) 1 line redacted~~ <br> **Courtland, AL 35618** | From:  **Birmingham District Office** <br> **Ridge Park Place** <br> **1130 22nd Street South** <br> **Birmingham, AL 35205** |

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2021-01705 | **MICHAEL COCHRAN,** <br> Investigator | (205) 651-7047 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*for James E Love Sr*

**BRADLEY A. ANDERSON,**
**District Director**

August 10, 2021

*(Date Issued)*

Enclosures(s)

cc:   **CHEROKEE NITROGEN** <br> **c/o Charles H. Hollis, Esq.** <br> **THE KULLMAN FIRM** <br> **1100 Poydras Street, Suite 1600** <br> **New Orleans, LA 70163**

**Kira Fonteneau, Esq.** <br> **FIVE POINTS LAW GROUP** <br> **2151 Highland Avenue, Suite 205** <br> **Birmingham, AL 35205**

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*